**UNITED STATES DISTRICT COURT**
**MIDDLE DISTRICT OF FLORIDA**
**TAMPA DIVISION**

| | | |
|---|---|---|
| **PLAINTIFFS UNDER SEAL,** | ) | |
| | ) | **CIVIL ACTION NO. ____________** |
| | ) | |
| **V.** | ) | **FILED UNDER SEAL** |
| | ) | |
| | ) | **JURY TRIAL DEMANDED** |
| **DEFENDANTS UNDER SEAL.** | ) | |
| ______________________________ | ) | |

**COMPLAINT FOR FALSE CLAIMS ACT VIOLATIONS UNDER 31 U.S.C. § 3729(a)(1)(A)(B)(C) AND FLORIDA FALSE CLAIMS ACT**

Respectfully submitted,

By: ____________________

**DAVID J. LINESCH, ESQ.**
Florida Bar No. 0376078
Attorney for Plaintiffs/Relators
*THE LINESCH FIRM, P.A.*
700 Bee Pond Road
Palm Harbor, FL 34683
Telephone: (727) 786-0000
Fax: (727) 786-0974
Email: Laborlaw@Lineschfirm.com

Dated: July 1, 2013

FILED
13 JUL -1 PM 4:05
CLERK U.S. DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA, FLORIDA

UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA, *ex rel.* Matthew McDonald and Matthew McDonald Individually, | CIVIL ACTION NO. 8:13cv1705T23TGW |
| STATE OF FLORIDA, ex rel. Matthew McDonald; | FILED UNDER SEAL |
| | PLAINTIFF'S COMPLAINT PURSUANT TO 31 U.S.C. § 3729(a)(1)(A)(B)(C) FEDERAL FALSE CLAIMS ACT AND FLORIDA STATE FALSE CLAIMS ACT |
| | JURY TRIAL DEMANDED |
| Plaintiffs, | |
| v. | |
| WALTER INVESTMENT MANAGEMENT CORPORATION, GREEN TREE SERVICING, LLC, REVERSE MORTGAGE SOLUTIONS, INC., REO MANAGEMENT SOLUTIONS, LLC, RMS ASSET MANAGEMENT SOLUTIONS, LLC, UNIFIED REAL ESTATE MANAGEMENT, BANK OF AMERICA CORPORATION, BANK OF AMERICA HOME LOANS, WELLS FARGO & COMPANY, WELLS FARGO HOME MORTGAGE | FILED 13 JUL -1 PM 4:05 DMS |
| Defendants | |

COMPLAINT FOR FALSE CLAIMS ACT VIOLATIONS
UNDER 31 U.S.C. § 3729(a)(1)(A)(B)(C) AND FLORIDA FALSE CLAIMS ACT

TPA 18117
$400



S1

1. The United States of America and the State of Florida, by and through *qui tam* Relator, **Matthew McDonald**, brings this action under 31 U.S.C. § 3729(a)(1)(A)(B)(C) ("False Claims Act") to recover all damages, penalties and other remedies established by the False Claims Act on behalf of the United States and themselves, and would show the following:

## I. INTRODUCTION

2. The mortgage industry has faced many challenges, putting strain on individuals, banks, the Court system, and federal and state government agencies.

3. The mortgage industry has a long standing history of Government involvement. In 1934 the Federal Housing Administration (FHA) was established by the National Housing Act of 1934. In 1938 The Federal National Mortgage Association, known as Fannie Mac (FNMA), was created. As noted by the U.S. Department of Housing and Urban Development (HUD) website (http://portal.hud.gov/hudportal/HUD?src=/about/hud_history):

> "In 1965, the Department of Housing and Urban Development Act of 1965 creates HUD as Cabinet-level agency. In 1992, the Federal Housing Enterprises' Financial Safety and Soundness Act of 1992 creates HUD Office of Federal Housing Enterprise Oversight to provide public oversight of FNMA and Federal Home Loan Mortgage Corporation (Freddie Mac). In 1998, HUD opens Enforcement Center to take action against HUD-assisted multifamily property owners and other HUD fund recipients who violate laws and regulations. Congress approves Public Housing reforms to reduce segregation by race and income, encourage and reward work, bring more working families into public housing, and increase the availability of subsidized housing for very poor families. In 2000, America's homeownership rate reaches a new record-high of 67.7 percent in the third quarter of 2000. A total of

71.6 million American families own their homes, more than at any time in American history."

4. According to the Federal Bureau of Investigation, "Mortgage fraud schemes are particularly resilient, and they readily adapt to economic changes and modifications in lending practices. Mortgage fraud perpetrators include licensed/registered and non-licensed/registered mortgage brokers, lenders, appraisers, underwriters, accountants, real estate agents, settlement attorneys, land developers, investors, builders, bank account representatives, and trust account representatives."(http://www.fbi.gov/stats-services/publications/mortgage-fraud-2010/2010-mortgage-fraud-report)

5. This suit concerns fraud perpetrated against the U.S. Government through false and fraudulent claims in the mortgage industry. As a result of this nationwide scheme, **Walter Investment Management Corporation (WIMC), Green Tree Servicing, LLC. (Green Tree), Reverse Mortgage Solutions, Inc. (RMS), REO Management Solutions, LLC (REOMS), RMS Asset Management Solutions, LLC (AMS), Unified Real Estate Management (UREM), Bank Of America Corporation (BOA), Bank of America Home Loans (BOA Home), Wells Fargo & Company (Well Fargo), and Wells Fargo Home Mortgage (WFHM)** reaped profits far beyond those it would have achieved from legitimate practices of their businesses. Further, **RMS** engaged in other fraudulent schemes as detailed below, in order to compel additional funds through disposing of Real Estate Owned ("REO") for Fannie Mae ("FNMA").

## II. PARTIES

6. **Matthew McDonald** ("McDonald" or "Relator") is a citizen of the United States of America and resident of the state of Florida. Relator, **McDonald**, brings this civil action for

violations of 31 U.S.C. § 3729(a)(1)(A)(B)(C), for himself and for the United States Government and State of Florida pursuant to 31 U.S.C. § 3730(b)(1).

7. Defendant, **Walter Investment Management Corporation** ("WIMC" or "Defendants"), is a national corporation with its principal place of business located at 3000 Bayport Drive, Suite 1100 Tampa, FL 33607. **Walter Investment Management Corporation** conducts extensive business nationally.

8. Defendant, **Green Tree Servicing, Inc.** ("Green Tree" or "Defendants"), is a wholly owned subsidiary of **Walter Investment Management Corporation**, with its corporate office located at 345 St. Peter Street, St. Paul, MN 55102. **Green Tree Servicing, Inc.** conducts extensive business nationally.

9. Defendant, **Reverse Mortgage Solutions, Inc.** ("RMS" or "Defendants"), is a wholly owned subsidiary of **Walter Investment Management Corporation**, with its corporate office located at 2727 Spring Creek Dr., Spring, TX 77373. **Reverse Mortgage Solutions, Inc.** conducts extensive business nationally.

10. Defendant, **REO Management Solutions, LLC** ("REOMS" or "Defendants"), is located at 5222 Cypress Creek Parkway, Houston, TX 77069 and conducts extensive business nationally.

11. Defendant, **RMS Asset Management Solutions, LLC** ("AMS" or "Defendants"), is a subsidiary company of **RMS** and located at 5222 FM 1960 West, Suite 105, Houston, TX 77069 and conducts extensive business nationally.

12. Defendant, **Unified Real Estate Management** ("UREM"), is a full service management company for multifamily properties and a subsidiary of Unified Property Group, located at 2200 Genoa Business Park Drive, Suite 100, Brighton, MI 48114. **UREM** conducts extensive business nationally.

13. Defendant, **Bank Of America Corporation** ("BOA" or "Defendants"), is an American multinational banking and financial services corporation with its principal place of business located in the Bank of America Corporate Center, 100 North Tryon Street, Charlotte, NC 28255. **Bank Of America Corporation** conducts extensive business nationally.

14. Defendant, **Bank of America Home Loans** ("BOA Home" or "Defendants"), is the mortgage unit of **Bank of America Corporation** and conducts extensive business nationally.

15. Defendant, **Wells Fargo & Company** ("WFC" or "Defendants"), is an American multinational banking and financial services holding company with operations around the world, with its corporate office located at 420 Montgomery Street, San Francisco, CA 94104. **Wells Fargo & Company** conducts extensive business nationally.

16. Defendant, **Wells Fargo Home Mortgage** ("WFHM" or "Defendants"), is a division of Wells Fargo Bank, NA, which is a subsidiary of **Wells Fargo & Company** and conducts extensive business nationally.

## III. JURISDICTION AND VENUE

17. This action arises under the False Claims Act, 31 U.S.C. § 3729(a)(1)(A)(B)(C).

18. Jurisdiction over this action is conferred on this Court by 31 U.S.C. 3732(a) and 28 U.S.C. 1331 in that this action arises under the laws of the United States of America.

19. Venue is proper in the United States District Court for the Middle District of Florida, Tampa Division, pursuant to 28 U.S.C. § 1391(b) and (c), and 31 U.S.C. §_3732(a) because the Defendant, transacts business in this District and the facts forming the basis for the Complaint occurred in this District.

## IV. PRELIMINARY STATEMENT

20. Relator, **Matt McDonald**, is an employee of **Walter Investment Management Corporation**, and presently holds the position of Interim Chief Financial Officer of **RMS**. Relator, **McDonald** was employed with **Walter Investment Management Corporation**, from approximately April 1, 2013, and remains employed as of this date. Relator, **McDonald**, began as a Consultant with **Walter Investment Management Corporation** in October of 2012 till his full time employment.

21. **Walter Investment Management Corporation** ("WIMC") is a publicly traded company on the NYSE under the symbol WAC and acquired **RMS** on November, 1, 2012. **RMS** is an approved servicer of FHA / HUD and FNMA.

22. **RMS** is in the business of reverse mortgages, which are government Federal Housing Administration ("FHA") insured loans available to seniors. **RMS** originates, securitizes loans into Government National Mortgage Association (GNMA) securities, and services the loans through their lifecycle. Specifically, **RMS** is in the business of servicing reverse mortgages. Due to the nature of the loans, many of these loans end up in default and foreclosure. At the end of the foreclosure cycle, the servicer files a claim to HUD for the insurance to cover losses.

23. The guidelines are very specific as to servicing through the default cycle, and the insurance claim process. Under FHA regulations, servicers are required to meet a series of event-specific timeframes during the default, foreclosure, conveyance, and mortgage insurance claim cycles. Failure to timely meet any processing deadline stops the accrual of debenture interest otherwise payable in satisfaction of a claim under the FHA mortgage insurance contract. The servicer is responsible for making the investor whole for any interest curtailment due to not meeting the required event-specific timeframes.

24. When a borrower defaults (most common causes are due to death, or not paying taxes or property insurance) there is a Due and Payable Date established, and the servicer has to take certain

actions with specific timeframes from that date. One of the first actions required is to obtain an appraisal within thirty (30) days of the Due and Payable date (24 CFR § 206.125(b)), and if the servicer does not obtain the appraisal within thirty (30) days then HUD will not reimburse interest at the debenture rate of interest from the date the appraisal should have been obtained, to the date the claim is paid. By not self-disclosing on the insurance claim that **Defendants** did not obtain the appraisal within the required timeline, they are filing a false or misleading mortgage insurance claim with HUD, resulting in HUD paying the debenture interest for the entire period up through the date the claim is paid.

25. Specifically, **RMS** historically has not self-disclosed this event to HUD on insurance claims as required by 24 CFR 206.125, which is called self-curtailment, resulting in HUD over paying on the insurance claim. The average **RMS** has calculated as the overpayment by HUD is in excess of seventeen thousand dollars ($17,000.00) per instance. The total exposure of **RMS** to have missed or late appraisals for filed claims, claims in the process of being filed, and future claims to be filed, is thirty-seven million dollars ($37,000,000.00) and growing.

26. When a borrower defaults, there is a Due and Payable Date established, and the servicer has to take certain actions with specific timeframes from that date. A required action is to take "first legal action" (24 CFR § 203.355) toward foreclosure within six (6) months of the Due and Payable date, unless an extension of such date is granted (24 CFR § 206.129). If the servicer does not to take "first legal action" within six (6) months, then HUD will not reimburse interest at the debenture rate of interest from the date the first legal action should have been taken, to the date the claim is paid.

27. Specifically, **RMS** does not disclose on the insurance claim that **RMS** did not take "first legal action" within the required timeline, the result is **RMS** filing a false or misleading mortgage insurance claim with HUD, resulting in HUD paying the debenture interest for the entire period up through the date the claim is paid. The average **RMS** has calculated as the overpayment by HUD is

in excess of twelve thousand dollars ($12,000.00) per occurrence. The total exposure of **RMS** to missed first legal for filed claims, claims in the process of being filed, and future claims to be filed is thirteen million dollars ($13,000,000.00) and growing.

28. Even if the **Defendants** do self-curtail (resulting in the claim being paid in the correct amount by HUD) there is still an issue as the investor will not realize the claim amount paid is lower by the curtailed debenture interest, which is due to the servicer error, and therefore recoverable by the investor. One of the largest investors in insured reverse mortgages is Fannie Mae (FNMA). If the **Defendants** already filed (and files in the future) accurate claims for all issues with missed appraisals and first legal actions, FNMA would receive claim payments that would be approximately twenty-three million dollars ($23,000,000.00) less than they would have received if the **Defendants** had serviced the loans according to the regulations. Unless FNMA can figure this out on a loan by loan basis and bill and collect the shortfall from the **Defendants**, despite the complexities of the systems, then the **Defendants** will have shorted FNMA potentially millions of dollars.

29. **RMS** services portfolios of loans previously serviced by **Bank of America**, much of which is owned by FNMA. **RMS** has identified an additional one-hundred million dollars plus ($100,000,000.00+) of curtailment exposure related non-compliance that occurred while **Bank of America** was servicing the loans. With the bulk of these being FNMA owned loans, either HUD is going to overpay due to false claims being filed (**RMS** does not have a policy on how to file these claims), or if the claims are filed correctly, FNMA will receive less than what is owed them. **Relator** expresses that approximately eighty percent (80%) of the one-hundred million dollars ($100,000,000.00) relates to FNMA owned loans, in turn FNMA would need to research how they were shorted by eighty million dollars ($80,000,000.00) on a loan by loan basis, which would be very challenging.

30. Defendant, **Wells Fargo** also services FNMA loans, and **RMS** is presently soliciting the servicing work on these loans. In reviewing the **Wells Fargo** accounts, **Relator** has determined that **Wells Fargo** engages in the same fraudulent scheme as **RMS** and **BOA** (detailed above), by not complying with the preconditional acts of procuring an appraisal and/or initiating "first legal action" yet nevertheless filing insurance claims with HUD for reimbursement despite this non-compliance.

31. The FHA Mutual Mortgage Insurance Fund for HECM (Home Equity Conversion Mortgages) is underwater by hundreds of millions of dollars, and the owners and servicers that get the benefit of this insurance have defrauded, continue to defraud HUD, and plan to continue to defraud HUD by hundreds of millions of dollars. **RMS** has a financial liability to HUD, FNMA and other investors (related to claims already submitted and paid by HUD), **BOA** and **Wells Fargo** have exposure as well.

32. Additionally, **RMS** has a subsidiary company, **RMS Asset Management Solutions, LLC** that has a contract with FNMA to handle the liquidation of all FNMA reverse mortgage properties that they have obtained through foreclosure. **RMS** also services approximately twenty thousand (20,000) reverse mortgage loans for FNMA, and as such forecloses on loans for FNMA. The disposition of these properties is then handled by **RMS Asset Management Solutions, LLC** (AMS). Because of a rule (RESPA) that states **RMS** cannot be both the servicer and the seller, **RMS** would not be entitled to a real estate commission on the disposition of properties that it previously serviced. To get around this issue, **RMS** put another company (**Unified Real Estate Management**) as the selling company on the closing statement (the HUD-1), even though it appears **Unified Real Estate Management** (UREM) is not performing the services represented. **UREM** then collects the commission at closing, keeps a small fee (approximately $100) and then sends the balance of the commission back to **RMS**. There has been over two-hundred fifty

thousand dollars ($250,000.00) sent by **Unified Real Estate Management** to **RMS** related to this fraudulent kickback practice, approximately twenty thousand dollars ($20,000) per month.

33. **Relator** has first-hand knowledge of **RMS** policy changes; in particular that **RMS** was not self-curtailing per regulations. **RMS** put out a policy in May 2013 that they would be self-curtailing only for certain investors. In following discussions with **WIMC, RMS, and Green Tree**, it was decided to not self-curtail. Relator noted that **WIMC, RMS, and Green Tree** had agreed in writing to self-curtail for certain clients, therefore could not put out a blanket policy advising otherwise. Presently, no changes have been made as of May 2013. **RMS** does not have a definitive policy which requires them to self-curtail (self-disclose) per HUD guidelines and CFR requirements, which would prevent these false and fraudulent claims from being filed in the future.

34. Relator, **McDonald**, has knowledge of the fraudulent scheme conducted by **Defendants** through fraudulent claim and billing applications to the U.S. Department of Housing and Urban Development ("HUD") and FNMA.

35. Relator, **McDonald**, took immediate steps with his employer, **WIMC**, to address the serious issues raised by the actions of **Defendants** of fraudulent billing applications to HUD. Relator, **McDonald's** opposition/complaints to **WIMC** have gone unheeded, and have initiated a campaign of retaliation against Relator, **McDonald**, which greatly jeopardizes his continued employment.

## VI. CAUSES OF ACTION

### COUNT I

### FALSE CLAIMS ACT VIOLATIONS (31 U.S.C. § 3729(a)(1)(A)(B)(C))

36. The allegations of the preceding paragraphs are re-alleged as if fully set forth herein.

37. **Defendants**, by and through its officers, agents and employees, knowingly presented or caused to be presented to an officer or employee of the United States Government, false or fraudulent claims for payment and approval.

38. **Defendants**, by and through its officers, agents and employees, knowingly made, used, or cause to be made or used, false records or statements, to get false or fraudulent claims paid or approved.

39. Based upon the false claims described above, **Defendants** directly or indirectly obtained payment from the United States Government for its services it provides to the mortgage industry.

40. **RMS**, by and through its officers, agents, and employees, knowingly made, used, or cause to be made or used, unlawful inducements to realtor firms to arrange kickbacks for commissions due on HUD closing statements.

41. The United States Government has sustained damages because of the acts of the **Defendants**, as a result of the Defendants' violation of the False Claims Act, 31 U.S.C. § 3729(a)(1)(A)(B)(C).

42. As set forth in the preceding paragraphs, **Defendants**, have knowingly violated 31 U.S.C. § 3729(a)(1)(A)(B)(C) and 42 U.S.C. §1320a-7b(b) and has thereby damaged the United States Government by its action in an amount to be determined at trial.

## COUNT II
## RETALIATION (31 U.S.C. § 3730(h))

43. *Qui tam* Relator realleges and incorporates by reference each and every allegation contained in paragraphs 1 through 42 of this Complaint.

44. The False Claims Act anti-retaliation provisions protect employees against... "threats," "harassment," and any other ... "discrimination." 31 U.S.C. § 3730(h); To state a valid claim for retaliation under 31 U.S.C. § 3730(h) Plaintiff must show (1) that he engaged in "protected conduct"; (2) that **WIMC/RMS/Green Tree** was aware of his actions, and (3) that he suffered an adverse employment action in retaliation for that conduct.

45. **WIMC**, by and through its employees, has harassed and threatened Relator, **McDonald**, as a result of his investigation of and opposition to their fraudulent conduct.

46. In violation of the False Claims Act § 3730(h), **WIMC** denied **McDonald** a position and jeopardized his employment opportunities in response to his investigation and initiation of this claim.

47. As a result of **WIMC's** conduct, Relator suffered negative employment consequences and has suffered damages, now and in the future.

**COUNT III**

**FLORIDA FALSE CLAIMS ACT VIOLATIONS (Fla. Stat. § 68.081 *et seq.*)**

48. The allegations of the preceding paragraphs are re-alleged as if fully set forth herein.

49. That is a *qui tam* action brought by Relator and the State of Florida to recover treble damages and civil penalties under the Florida False Claims Act, Fla. Stat. § 68.081 *et seq.*

50. Fla. Stat. § 68.082(2) provides liability for any person who –

(a) knowingly presents, or causes to be presented, to an officer or employee of an agency a false or fraudulent claim for payment or approval;

(b) knowingly makes, uses, or causes to be made or used, a false record or statement to get a false or fraudulent claim paid or approved by an agency;

(c) conspires to submit a false claim to an agency or to deceive an agency for the purpose of getting a false or fraudulent claim allowed or paid.

51. Had the State of Florida known that **Defendants** were violating the federal and state laws cited herein, it would not have paid the claims submitted in connection with **Defendant's** fraudulent and illegal practices.

52. As a result of **Defendants** violations of Fla. Stat. § 68.081 *et seq.*, the State of Florida has been damaged.

53. There are no bars to recovery under Fla. Stat. § 68.081 *et seq.* and, or in the alternative, Relator is an original source as defined herein. Relator is a private person with direct and independent knowledge of the allegations of this Complaint, who has brought this action pursuant to Fla. Stat. § 68.083(2) on behalf of himself and the State of Florida.

54. This Court is requested to accept pendent jurisdiction of this related state claim as it is predicated upon the exact same facts as the federal claim, and merely asserts separate damage to the State of Florida.

## COUNT IV

## RETALIATION (F.S. § 448.101 - 448.105)

55. *Qui tam* Relator, **McDonald** re-alleges and incorporates by reference each and every allegation contained in the preceding paragraphs.

56. In violation of the False Claims Act § 3730(h), **WIMC** took the retaliation directed against Plaintiff as a result of his protected conduct gives rise to liability under the Florida Whistleblower Statute (F.S. § 448.101- 448.105). The Florida Whistleblower Statute prohibits retaliation against an employee who openly opposes a violation of 'law, rule, or regulation' (F.S. § 448.101(4)). Previously, Plaintiff **McDonald** openly complained about/opposed the fraudulent scheme engaged in by **Defendants** of submitting incorrect claims to HUD for payment, in clear violation of the Federal False Claim Act.

57. Additionally, **Defendants** conduct of using "unfair methods of competition, and unfair or deceptive acts or practices in the conduct of any trade or commerce" constitutes a clear-cut violation of the Florida Deceptive and Unfair Trade Practices Act (F.S. § 501.204). It is clear that **Defendants** fraudulent and unlawful sales practices as detailed within this Complaint constitute deceptive sales practice under Florida Statute as well as the federal False Claims Act. **McDonald's**

opposition to this violation of the law constitutes protected activity under the Florida Whistleblower Act. **WIMC's** campaign of retaliation against him, as articulated in count two, clearly constitutes unlawful retaliation in violation of the act.

58. In violation of the Florida Whistleblower Act, F.S. § 448.101(5), **WIMC** took adverse employment actions against **Relator** in response to his opposition to **Defendants** violation of Florida law, dealing with deceptive sales practices and the Federal False Claim Act.

59. As a result of **WIMC's** conduct, **Relator** suffered negative employment consequences and has suffered damages, now and in the future against **Relator** in response to his investigation and initiation of this claim.

## VII. PRAYER OF RELIEF

60. WHEREFORE, Relator, **McDonald**, on behalf of himself and the United States Government, prays:

(a) That this Court Order the **Defendants** to cease and desist from violating 31 U.S.C. § 3729(a)(1)(A)(B)(C);

(b) That **Relator** be awarded all relief necessary to make him whole, including but not limited to, two times his back pay, interest on the back pay, and compensation for all special damages sustained, including attorneys' fees and costs.

(c) That this Court enter judgement against **Defendants** in an amount equal to three times the amount of damages the United States Government has sustained because of this action, plus a civil penalty of at least $5,000 to $10,000 for each action in violation of 31 U.S.C. § 3729(a)(1)(A)(B)(C), and the costs of this action with interest, including the costs of the United States Government for its expenses related to this action;

(d) The Relator be awarded all costs incurred, including reasonable attorneys' fees;

(e) That in the event the United States Government continues to proceed with this action, Relator be awarded an amount for bringing this action in the amount of at least fifteen percent (15%) but not more than twenty-five percent (25%) of the proceeds of the action or settlement of the claim;

(f) That in the event the United States Government does not proceed with this action, Relator be awarded an amount that the court decides is reasonable for collecting the civil penalty and damages, which shall be not less than twenty-five percent (25%) nor more than thirty percent (30%) of the proceeds of the action settlement;

(g) That a trial by jury be held on all issues;

(h) That the United States Government and Relator receive any other relief, both at law and at equity, to which they may reasonably appear entitled.

(i) That this Court Order **WIMC**, cease and desist from violating 31 U.S.C. § 3730(h) and Relator be awarded relief including; reinstatement with the same seniority status that employee, contractor, or agent would have had but for the discrimination, two times the amount of back pay, interest on the back pay, and compensation for any special damages sustained as a result of the discrimination, including litigation costs and reasonable attorneys' fees.

(j) That this Court Order **WIMC**, cease and desist from violating the Florida Whistleblower Act, F.S. § 448.101- 448.105.

(k) Relator be awarded compensation for lost wages, benefits, and other remuneration and any other compensatory damages allowable at law.

## IX. DEMAND FOR JURY TRIAL

61. Pursuant to Federal Rule of Civil Procedure 38, Relator demands a trial by jury.

WHEREFORE, Relator respectfully requests all relief described herein.

Dated: July 1, 2013

Respectfully submitted,

By:

**DAVID J. LINESCH, ESQ.**
Florida Bar No. 0376078
Attorney for Relator
*THE LINESCH FIRM, P.A.*
700 Bee Pond Road
Palm Harbor, FL 34683
Telephone: (727) 786-0000
Fax: (727) 786-0974
Email: Laborlaw@Lineschfirm.com

## CERTIFICATE OF SERVICE

I hereby certify that a copy of the foregoing has been hand delivered by courier to: Clerk, U. S. District Court 801 North Florida Avenue Tampa, Florida 33602 and mailed; postage prepaid, U.S. First Class Certified Mail, this 1st day of July, 2013 to:

| | |
|---|---|
| Office of The Attorney General<br>**Florida Attorney General**<br>The Capitol, PL 01<br>Tallahassee, Florida 32399-1050 | Office of the Attorney General<br>**U.S. Department of Justice**<br>950 Pennsylvania Avenue, N.W.<br>Washington, D.C. 20530-0001 |
| **U.S. Attorney's Office**<br>400 North Tampa Street, Room 329<br>Tampa, Florida 33602 | |

By:

**DAVID J. LINESCH, ESQ.**
Florida Bar No. 0376078
Attorney for Relator
*THE LINESCH FIRM, P.A.*
700 Bee Pond Road
Palm Harbor, FL 34683
Telephone: (727) 786-0000
Fax: (727) 786-0974
Email: Laborlaw@Lineschfirm.com